O

# United States District Court
# Central District of California

| | |
|---|---|
| ALEKSEI SERGEYEVICH VORONIN,<br><br>Petitioner,<br><br>v.<br><br>MERRICK GARLAND, et al.,<br><br>Respondents. | Case № 2:20-cv-07019-ODW (AGRx)<br><br>**ORDER GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT [42] AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT [43]** |

## I.    INTRODUCTION

Petitioner Aleksei Sergeyevich Voronin filed a petition for review of a decision by the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS") to deny Voronin's Form I-485 Application for Permanent Residence.  (*See* Pet., ECF No. 1.)  Voronin asserts claims for declaratory and injunctive relief against Respondents Merrick B. Garland as U.S. Attorney General; Alejandro Mayorkas as Secretary of the DHS; Tracy Renaud as the Senior Official Performing the Duties of Director of USCIS; and Lory C. Torres as District Director of USCIS, Los Angeles Field Office.[1]  (*See* Compl., ECF No. 7.)

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Attorney General Merrick B. Garland was automatically substituted for his predecessors, Jeffrey A. Rosen and William P. Barr; Alejandro Mayorkas was automatically substituted for his predecessor, Chad Wolf; Tracy Renaud was automatically

1    Each side now moves for summary judgment by way of cross-Motions with
2    intertwined briefing. (Resp'ts.' Mot. Summ. J. ("Mot."), ECF No. 42; Pet'r's Opp'n
3    Resp'ts' Mot. & Pet'r's Mot. Summ. J. ("Opp'n"), ECF No. 43; Resp'ts' Reply &
4    Opp'n Pet'r's Mot. ("Reply"), ECF No. 46; Pet'r's Reply, ECF No. 47 ("Sur-Reply").)
5    After carefully considering the papers filed in connection with the Motions, the Court
6    deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78;
7    C.D. Cal. L.R. 7–15. For the following reasons, the Court **GRANTS** Respondents'
8    Motion and **DENIES** Voronin's Motion.

## II.    BACKGROUND

Voronin stipulates that all the facts in Respondents' Statement of Uncontroverted Facts and Conclusions of Law are undisputed. (Sur-Reply 2.) Those facts are as follows.

Voronin is a national of the Russian Federation and was last admitted to the United States on April 17, 2013. (Resp'ts' Statement of Uncontroverted Facts & Conclusions of Law ("SUF") 1, ECF No. 42-1.) On April 21, 2014, Voronin became an asylee. (SUF 2.) On April 22, 2015, using Form I-485, Voronin applied to USCIS for adjustment of his status to that of a lawful permanent resident. (SUF 3.)

In June or July 2015, Voronin began working at Los Angeles Wonderland Caregivers, a cannabis cultivation collective. (SUF 4.) Under California law, premises that cultivate or sell cannabis must have a digital video surveillance system, and the system must adhere to certain standards. 4 Cal. Code Regs. § 15044 (2022). Voronin's job was at Wonderland to install and maintain a compliant video surveillance system at Wonderland's premises. (SUF 5.)

Under the cannabis laws in effect in California at the time, in order to work for Wonderland, Voronin was required to become a member of Wonderland's cannabis collective, which he did by signing Wonderland's collective agreement. (SUF 6.)

---

substituted for her predecessor, Kenneth Cuccinelli; and Lory C. Torres was automatically substituted for her predecessor, Corrina A. Luna.

Under the agreement, Voronin and other members of the collective received a "reimbursement fee" for their contributions to the collective, and Voronin himself received about $2,000 per month for his services. (SUF 7; Pet'r's Statement of Genuine Issues ("SGI") 6, ECF No. 46-1.) The agreement advised signatories that:

> Despite California's medical cannabis laws and the terms and conditions of this Agreement, California medical cannabis cultivators, transporters, distributors or possessors may still be subject to arrest by state or federal officers and prosecuted under state or federal law. The Federal Controlled Substance Act (21 U.S.C. § 801) prohibits the manufacture, distribution and possession of cannabis without any exemptions for medical use.

(SUF 10.) Although being a member of the collective afforded Voronin the opportunity to receive cannabis plants to grow on his own, Voronin never received any cannabis plants from Wonderland, and Voronin's duties with Wonderland never involved growing, selling, or processing cannabis. (Certified Administrative Record ("CAR") 93, ECF No. 35-1.)

Wonderland did not have a license under California law to grow cannabis at the location where Voronin provided his services. (SUF 12.) Thus, in October 2015, the police raided the Wonderland premises, arresting Voronin and others. (SUF 11.) Voronin was charged with a violation of California Health and Safety Code section 11358, which imposes penalties for "[e]ach person who plants, cultivates, harvests, dries, or processes cannabis plants, or any part thereof, except as otherwise provided by law." (SUF 13.) Eventually, in 2017, Voronin pleaded guilty to a violation of Los Angeles Municipal Code section 12.21(A)(1)(a), a zoning ordinance, based on Wonderland's unlicensed use of the premises to grow cannabis. (SGI 18.)

During the pendency of these criminal proceedings, USCIS held Voronin's Form I-485 application in abeyance. (SUF 16.) On June 11, 2019, USCIS issued a notice of intent to deny Voronin's application for permanent residence ("NOID"), citing Immigration Nationality Act ("INA") § 212(a)(2)(C) as the basis for the intended denial. (SUF 17; CAR 92–97.) Voronin, represented by his present counsel,

filed a brief in response to the NOID, arguing that (1) USCIS's finding that Voronin assisted in the illicit trafficking of cannabis was incorrect as a matter of law; (2) INA § 212(a)(2)(C) is void for vagueness; and (3) by denying his application, USCIS violated the Equal Protection Clause of the United States Constitution. (SUF 18; CAR 103–23.)

On October 7, 2019, USCIS issued its decision denying Voronin's I-485 application for permanent residence ("Decision"). (SUF 19.) USCIS found Voronin had not overcome the basis for inadmissibility set forth in the NOID because (1) USCIS is required to apply federal law in adjudicating eligibility for federal immigration benefits, and under federal law, cannabis is a Schedule I controlled substance; and (2) USCIS had reason to believe that Voronin had assisted in the trafficking of cannabis, rendering him inadmissible under INA § 212(a)(2)(C). (SUF 19–20.) USCIS's key reasoning in making this finding was as follows:

> While you did not work at Wonderland on a full-time permanent basis, and you personally did not sell marijuana, your work setting up the video security system at Wonderland and training [Wonderland's manager] and employees on how to use the surveillance system was necessary for the operation of the business. The fact that you were paid cash and consider yourself as having been an independent contractor, does not negate the fact that your work was necessary for Wonderland's operation. You were responsible for installing and maintaining the video security at a marijuana grow house for an organization that grows, cultivates, sells, and distributes a federally controlled substance. . . .
>
> Because Wonderland engages in the trafficking of marijuana as defined under federal law, and you spent several months working at Wonderland installing video surveillance equipment, you have knowingly assisted in the trafficking of marijuana.

(CAR 55–56.) Voronin appealed the Decision to USCIS and lost. (SUF 22–23.)

Then, on April 14, 2020, Voronin filed a petition with the United States Court of Appeals for the Ninth Circuit for review of USCIS's Decision. (Order Granting

Mot. Dismiss 4, ECF No. 23.)  On June 28, 2020, the petition was transferred to this Court.  (Mot. 4; *see* Order from Ninth Circuit, ECF No. 2.)  Post-transfer, on October 5, 2020, Voronin filed his Complaint, asserting three claims for declaratory and injunctive relief based on his contentions that the Decision (1) is arbitrary and capricious in violation of the Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA"); (2) is based on an unconstitutionally vague statute (namely, INA §b212(a)(2)(C)); and (3) violates the Equal Protection Clause of the U.S. Constitution.  (*See generally* Compl.)  USCIS moved to dismiss Voronin's second and third claims, and on April 20, 2021, the Court granted the motion, dismissing those claims with prejudice.  (*See* Order Granting Mot. Dismiss 9.)  These cross-Motions followed.

### III.   LEGAL STANDARD

#### A.   Administrative Procedure Act

The Administrative Procedure Act permits an individual desiring to challenge the final decision of an administrative agency to seek review in a federal district court. 5 U.S.C. § 706.  "Under the APA, the agency's role is to resolve factual issues and arrive at a decision supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).  "[T]he district court acts like an appellate court," *Tolowa Nation v. United States*, 380 F. Supp. 3d 959, 963 (N.D Cal. 2019), and must "hold unlawful and set aside agency action, findings, and conclusions found to be," among others, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 706(2)(A).  The reviewing court considers the "final agency action," *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009) (emphasis removed), and review is confined to the administrative record, *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).

A court reviews the agency's purely legal determinations de novo.  *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1144 (9th Cir. 2000).  But when the

1  agency has made factual findings, the court may review those findings only for
2  substantial evidence; that is, the agency action is valid if a "reasonable basis exists"
3  for the agency's factual findings. *Arrington*, 516 F.3d at 1112.  An agency abuses its
4  discretion, and its decision is therefore subject to invalidation, "if there is no evidence
5  to support the decision or if the decision was based on an improper understanding of
6  the law." *Tongatapu Woodcraft Haw., Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir.
7  1984).

8       If the court determines that the agency is action is invalid, it generally must
9  remand to the agency for further proceedings. *Fla. Power & Light Co. v. Lorion*,
10 470 U.S. 729, 744 (1985).

11 **B.**    **Summary Judgment**

12      A court "shall grant summary judgment if the movant shows that there is no
13 genuine dispute as to any material fact and the movant is entitled to judgment as a
14 matter of law." Fed. R. Civ. P. 56(a).  Because judicial review under the APA is
15 confined to the administrative record, *Arrington*, 516 F.3d at 1112, courts routinely
16 resolve APA actions by way of summary judgment, *Occidental Eng'g*, 753 F.2d
17 at 770.  *See Tolowa Nation*, 380 F. Supp. 3d at 963 (noting that, when a case is
18 brought under the APA, "the entire case is a question of law" (internal quotation
19 marks removed).)

20                **IV.**    **DISCUSSION**

21      As a preliminary matter, Respondents object to Voronin having styled his
22 Opposition to Respondents' Motion as Voronin's own Cross-Motion for Summary
23 Judgment, citing procedural concerns and an insufficient conference of counsel, both
24 as to Voronin's Motion in general and as to his defense of duress and coercion in
25 particular.  (Reply 1.)

26      Respondents' procedural concerns were largely mitigated by the Court's June 7,
27 2022 Minute Order, in which the Court adjusted the briefing schedule on the Cross-
28 Motions.  (Min. Order, ECF No. 45.)  Otherwise, the Court declines to determine

whether the conference of counsel was sufficient to support Voronin moving for summary judgment and instead denies Voronin's Motion on substantive grounds as discussed herein.

**A.     The Decision contains no error of law.**

The INA controls the admission and status of individuals in the United States, including by granting individuals political asylum and providing them with the subsequent ability to adjust their status to that of a lawful permanent resident. The statute that governs eligibility for permanent resident status is INA § 209, 8 U.S.C. § 1159, which requires that, among other things, the alien applicant not be subject to certain grounds of inadmissibility as detailed at INA § 212(a), 8 U.S.C. § 1182. Among those grounds of inadmissibility is INA § 212(a)(2)(C)(i), which provides in relevant part that:

> (C)     Any alien who the consular officer or the Attorney General knows or has reason to believe—
>
> (i)     is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so; . . .
>
> is inadmissible.

INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C).

Respondents now move for summary judgment on the grounds that Voronin participated in a cannabis cultivation collective that was illegal under federal law, and USCIS was neither arbitrary nor capricious in deciding that Voronin failed to establish that he was eligible to have his status adjusted. (Mot. 1.) Voronin opposes Respondents' Motion and moves for summary judgment in his favor on the grounds that the Decision was arbitrary, capricious, and an abuse of discretion. (Opp'n 2.)

To begin, Voronin's argument that USCIS did not have "reason to believe" he

trafficked cannabis is largely irrelevant in the context of these Motions. The case law interpreting the "reason to believe" provision of 8 U.S.C. § 1182(a)(2)(C) indicates that the "reason to believe" component of the statute relates to the sufficiency of the evidence the applicant places before USCIS. *See Lopez-Molina v. Ashcroft*, 368 F.3d 1206, 1211 (9th Cir. 2004) (associating whether USCIS has "reason to believe" with whether USCIS supported its conclusion with "reasonable, substantial and probative evidence"); *see Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1349 (11th Cir. 2010) (considering whether USCIS had "reason to believe" applicant had assisted drug trafficking, where evidence showed only that (1) he made contact with a person who had recently handed cocaine to an undercover agent and (2) he tried to drive away when undercover officers approached his car). In the present matter, the sufficiency of the evidence is not at issue. The parties agree on the facts. Voronin testified and admitted before USCIS that he took a job maintaining the video surveillance system at a cannabis collective. USCIS therefore had "reason to believe" that Voronin worked a job maintaining the surveillance system at a cannabis collective. The question is whether USCIS committed legal error in determining that Voronin had assisted in the trafficking of cannabis by maintaining Wonderland's surveillance system.

The answer to this question is "no." The key language in INA § 212(a)(2)(C)(i) is "knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking" of controlled substances. In construing this language, the Court must "strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous." *United States v. Tan*, 16 F.4th 1346, 1350 (9th Cir. 2021).

Applying this principle, the Court first observes that listing aiding, abetting, and assisting as three separate bases for inadmissibility indicates that Congress intended that the statute cover conduct broader than that which criminal law recognizes as "aiding and abetting." Aiding and abetting is a theory of liability under which a third party commits a crime and the accused intentionally acts in a way that facilitates the

crime's commission. *See Rosemond v. U.S.*, 572 U.S. 65, 76 (2014). The fact that Congress chose (1) to use "aider [or] abettor" instead of "aider and abettor," and (2) to include "assister" next to these two terms, clearly indicates Congress meant to include a wide range of assistive conduct within the scope of the statute, beyond the traditional, more narrow concept of "aiding and abetting." That Congress also included "colluder" along with "conspirator" mirrors and confirms this analysis: to "collude" has a different meaning than to "conspire," and by employing both words in the statute, Congress expressed its intent to cover a wider range of conduct than "conspiracy" as that term is defined by criminal law. In light of this observation, and under the common meaning of the word "assist," USCIS did not err in determining that Voronin assisted Wonderland in trafficking cannabis.

Voronin also advances a policy argument in support of his contentions. (*See* Sur-Reply 8–9 ("Plaintiff is simply asking this Court to review the relevant factors not from an agency driven 'strict liability' approach but from a reasonable person approach [and] to decide whether USCIS's heavy handed interpretation finding Plaintiff an aider, abettor or assistor really is a 'rational' policy . . . ." (citing Mot.)) But Voronin presents no law suggesting that district courts reviewing agency decisions are free to substitute their own policy judgments for black-letter law. Currently, cannabis is a federal Schedule I controlled substance, and USCIS is bound by federal law in adjudicating immigration applications. These points of law are beyond dispute. Voronin also does not dispute that he entered into an ongoing services contract with a cannabis collective under which he was to install and maintain a video surveillance system on the cannabis collective's premises. He therefore does not dispute that he took a job maintaining a surveillance system at a company involved in what federal law considers to be drug trafficking. The fact that Voronin's relationship with Wonderland was ongoing, and that he was responsible for maintaining the surveillance system and training other Wonderland employees on how to use it, makes Voronin's work unlike that of a plumber who might fix Wonderland's pipes or an Uber driver

hailed to transport Wonderland's personnel from one work location to another. These types of contractors provide services on a one-off basis without establishing any deeper or ongoing relationship with the hiring entity, and they differ materially from Voronin's position in these aspects. USCIS applied the law to these facts and found that Voronin assisted in the trafficking of cannabis. It did not err in reaching its Decision.

### B. Voronin's arguments regarding duress and coercion do not merit reversing the Decision.

Voronin's remaining argument is that his job at Wonderland was the product of duress and coercion and that, as a result, he did not knowingly assist in trafficking cannabis under INA § 212(a)(2)(C)(i). (Opp'n 16–19.) There are two problems with this argument.

First, upon review of the Administrative Record, the Court remains unconvinced that Voronin raised this argument, or anything like it, during the proceedings before USCIS. Voronin's counsel declares that this is because counsel did not formulate the argument until after Respondents emphasized in their Motion that Voronin's actions should be characterized as "assisting." (Decl. Fariborz Rouzbehani ¶ 2e, ECF No. 47.) This argument is highly suspect and is not well taken. In its Decision, USCIS could not have been more clear that its conclusion was based on Voronin's assisting in drug trafficking rather than directly committing it; on the last page, the Decision reads: "USCIS has determined that you are inadmissible pursuant to INA 212(a)(2)(C)(i), as there is reason to believe you have aided, abetted, assisted, conspired or colluded in the illicit trafficking of marijuana." (CAR 57; s*ee also* CAR 92 (citing, in NOID, entirety of INA § 212(a)(2)(C)(i), including "assister" provision, and later, framing issue as whether Voronin was "involved" in illicit drug trafficking). Thus, if counsel formulated the duress/coercion argument in response to arguments that Voronin had assisted in cannabis trafficking, the Court would have expected counsel to raise the issue with USCIS, or, at the very latest, in Voronin's district court

Complaint. Voronin's duress/coercion argument is ultimately a factual one, not a legal one, and the facts supporting the argument have always been available to him. That he did not raise the argument until the eleventh hour gives the Court serious doubts about whether the argument should be considered at all.

Second, even if the Court considers the argument and accepts all of Voronin's related factual contentions as true, the argument is substantively unmeritorious. Voronin argues that his relationship with Wonderland was the product of duress and coercion: duress, because he needed a job to pay his bills, and coercion, because Wonderland's manager assured Voronin that "the business was legal and that by signing the collective agreement, he was legally working." (Opp'n 16.) That being the case, he argues, the services he provided to Wonderland cannot be considered knowingly assisting drug trafficking under INA § 212(a)(2)(C)(i).

This argument fails on its premises. The bare fact that Voronin needed a job to pay the bills does not make the job coercive; otherwise, most employment contracts would be coercive as a matter of law. Moreover, irrespective of what Voronin claims he did or did not know about immigration law at the time, the simple fact remains that, then and now, cannabis is a Schedule I controlled substance under federal law. Voronin cannot credibly claim that he thought that merely signing the collective agreement made Wonderland's operation, and Voronin's association with it, legal under federal law. The collective agreement itself is clear on this point. (*See* CAR 158 ("The Federal Controlled Substance Act (21 U.S.C. § 801) prohibits the manufacture, distribution and possession of cannabis without any exemptions for medical use.").) Any confusion Wonderland's supervisor may have caused by his representations about the legality of cannabis or of Voronin's job simply does not rise to the level of duress or coercion that invalidates a finding of basic scienter.

Moreover, even if its premises are true, Voronin's duress/coercion argument fails because the conclusion does not follow from the premises. The question here is not whether Voronin understood the intricacies of federal immigration law and

subjectively knew what effect working for Wonderland would have on his immigration status. The question is whether Voronin knew he was providing services to a cannabis business, and the answer is that he obviously did. USCIS determined that this made him ineligible for permanent resident status, and in doing so, it properly applied the law to the facts.

For these reasons, the Court finds no error in USCIS's Decision. The Court accordingly grants Respondents' Motion and denies Voronin's Motion.

## V.  CONCLUSION

The Court **GRANTS** Respondents' Motion for Summary Judgment, (ECF No. 42), and **DENIES** Voronin's Motion for Summary Judgment, (ECF No. 43). The Court hereby **VACATES** the trial and all pretrial dates and deadlines and correspondingly **DENIES AS MOOT** the Parties' Stipulation to continue the trial. (ECF No. 51.) The Court will issue Judgment.

**IT IS SO ORDERED.**

August 4, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**